IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Tammy Lewis and XXX Lewis (a minor), individually and on behalf of all putative class members residing in the State of Illinois,** | ) ) ) ) ) ) | CASE NO. 19 cv 7787 |
| | | JUDGE: |
| Plaintiff, | ) ) | MAGISTRATE JUDGE: |
| v. | ) ) ) | |
| **JUUL LABS, INC.,** | ) ) ) | JURY DEMANDED |
| Defendant. | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT
### FOR MONEY DAMAGES AND INJUNCTIVE RELIEF
### FOR STRICT PRODUCT LIABILITY AND NEGLIGENCE

Plaintiffs Tammy Lewis and XXX Lewis (a minor) (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated individuals in the State of Illinois, through undersigned counsel, bring this Class Action Complaint for negligence, strict product liability and pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA") against Defendant Juul Labs, Inc, a Delaware corporation ("JUUL"):

**NATURE OF THE ACTION**

1. JUUL manufactures, markets and sells e-cigarette devices and accessories to consumers in the United States and around the world. The medical and public health communities in the U.S. commonly refer to JUUL devices and accessories collectively as an Electronic Nicotine

Delivery System ("ENDS" or "System"). A JUUL ENDS heats a liquid contained within the System until the liquid vaporizes into an aerosol, at which point the ENDS user inhales the aerosol. When the JUUL ENDS user subsequently exhales the aerosol, he or she discharges the residue into the ambient air, releasing with that discharge dangerous chemical compounds, including nicotine and numerous other toxins, some of which are known carcinogens (the "Discharge"). Whereas traditional cigarette smoke leaves a distinct odor and otherwise is easily perceptible to the senses, JUUL ENDS Discharge ordinarily dissipates quickly and leaves no meaningful smoke trail or odor. As a result, JUUL ENDS users can (and do) use JUUL ENDS even in confined spaces without significant risk of detection by teachers, parents, and peers.

2. Using the JUUL ENDS in the manner in which JUUL intended or reasonably expected the JUUL ENDS to be used, JUUL ENDS users routinely have released the toxic Discharge from JUUL ENDS in confined spaces like high school bathrooms and classrooms, on school buses and in other similar situations. Plaintiffs thus involuntarily have been exposed to nicotine and the other toxins in JUUL ENDS Discharge and have suffered adverse health consequences and are substantially certain to suffer adverse health consequences in the future from inhalation of JUUL ENDS Discharge.

3. Plaintiffs bring this action individually and on behalf of a proposed class of Illinois residents who were involuntarily exposed to nicotine and other harmful toxins in JUUL ENDS Discharge in order to recover money damages for the adverse effects of bodily injury resulting from exposure to JUUL ENDS Discharge and for recovery of future costs reasonably likely to be incurred in order to assess, diagnose and treat any adverse physical effects from exposure to the Discharge that may manifest in the future.

## PARTIES

4. Plaintiff Tammy Lewis ("Ms. Lewis") is and, at all relevant times, has been a resident and citizen of the State of Illinois and a resident of Will County, Illinois. Ms. Lewis is the mother of Plaintiff XXX Vaper, a minor ("Minor").[1] Ms. Lewis does not smoke and has not in the past ten (10) years knowingly exposed herself to JUUL ENDS Discharge for any appreciable period of time.

5. Plaintiff Minor is and, at all relevant times, has been a resident and citizen of the State of Illinois and a resident of Will County, Illinois. Minor has never used combustible tobacco products or any ENDS and has not knowingly exposed himself to JUUL ENDS Discharge for any appreciable period of time.

6. Defendant JUUL is a Delaware corporation with its headquarters and principal place of business located at 560 20th Street, San Francisco, California 94107. JUUL conducts business in the State of Illinois by advertising and selling its JUUL ENDS and pods to Illinois residents for use within the State of Illinois.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because all Plaintiffs and Defendant are citizens of different States. Plaintiffs are citizens of the State of Illinois. Defendant is a citizen of Delaware and California. The amount in controversy exceeds $75,000, exclusive of interests and costs.

8. Jurisdiction is also proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because: (i) the proposed class consists of well over 1,000,000

---

[1] Plaintiffs refer to the minor Plaintiff as "XXX Lewis" to protect his or her identity. Plaintiffs will disclose all relevant details about Plaintiff XXX Lewis following entry of an appropriate Protective Order in the instant case.

3

(One Million) members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiffs, are citizens of a state (Illinois) that is different from Defendant's home states of Delaware and California; and (iii) the aggregate amount in controversy exceeds $5,000,000 (Five Millions Dollars), exclusive of interests and costs. As of the filing of this Complaint, there are more than 1,000,000 (One Million) individuals in the same or a similar position as Plaintiffs that currently are paying or will be compelled in the future to pay for medical treatments to treat conditions resulting from exposure to JUUL ENDS Discharge containing nicotine and toxic substances. To the extent at least 10,000 (Ten Thousand) putative class members incur at least $500.00 (Five Hundred Dollars) in unreimbursed medical costs, increased health care premiums or markedly higher life insurance premiums due to involuntary exposure to nicotine and other toxins attributable to exposure to JUUL ENDS Discharge, JUUL's potential liability to the class exceeds CAFA's $5,000,000 threshold (without consideration of the attorney's fees and costs Plaintiffs and the class may recover for prosecuting this action).

9. Venue is proper in this District pursuant to 28 USC § 1391 because JUUL regularly conducts business in Illinois and in the past has conducted millions of business transactions within this District and because Plaintiffs' causes of action arose, in substantial part, within this District where the adverse effects of JUUL's improper conduct have been and will continue to be felt.

## SUBSTANTIVE ALLEGATIONS

10. Since at least 2016, JUUL has sold millions of ENDS to Illinois consumers. When used in the manner JUUL intended, a JUUL ENDS identified as containing nicotine delivers a significant amount of nicotine to the user in a concentration that often surpasses the nicotine delivered when using traditional combustible tobacco products. For example, if consumed within

4

a few hours, some JUUL pods deliver an equivalent amount of nicotine as if the user had smoked a full pack of traditional cigarettes.

11. JUUL designed and manufactures the most popular versions of the JUUL ENDS to achieve two principal purposes: 1) to deliver a consistent nicotine dosage to the ENDS USER; and 2) to avoid certain product attributes comparable to traditional combustion cigarette products such as a visible smoke stream, odor and solid residue (cigarette butts and ashes) so use of the JUUL ENDS will be considered acceptable in environmental and social settings where traditional tobacco products are prohibited. JUUL ENDS accomplish these objectives by, among other things, using nicotine salts as a constituent of the liquid heated in the JUUL ENDS. Nicotine salts produce the same or greater nicotine exposure to the user than traditional tobacco products without throat irritation, visible smoke or distinct tobacco smell. As a result, the JUUL ENDS user receives none of the physiological "reminders" regarding the amount of nicotine being ingested at any one time that accompany traditional combustible tobacco product use: there is no haze in the room and no ashtray full of discarded butts to help the JUUL ENDS user monitor the intake of nicotine while vaping.

12. The sensory cues resulting from the use of traditional combustible tobacco products like cigarette smoke, ashes and other residue also serve the important function of alerting non-users to the presence of irritants and toxins in the ambient air where the combustion tobacco products have been used or currently are being used. Accordingly, once the medical/public health community reached consensus regarding the dangers of exposure to second-hand smoke and this knowledge became public, in most cases, individuals who wished to avoid exposure to second hand smoke could take "evasive action" by leaving the room or, as eventually occurred, collectively joining to persuade public officials to prohibit the use of combustible tobacco products

5

indoor, at work, on airplanes, trains and buses and in other confined spaces that would otherwise be contaminated by combustible tobacco byproducts.

13. As research eventually determined, traditional combustible tobacco products uniformly contain approximately 600 ingredients. When burned, cigarettes create more than 7,000 chemicals, many of which are toxic and at least 69 of which are known to cause cancer. The toxins cigarette smoking releases into the ambient air, however, was only one of the central concerns of the "war on tobacco." Significant medical concern also arose from cigarette users' ingestion of nicotine. When introduced into the human bloodstream, nicotine acts directly on the neurotransmitter dopamine, causing a dependence similar to heroin and other deadly opiates. Regardless of the means of exposure, nicotine affects brain development, attention, cognition, and raises the risk of addiction to other dangerous drugs. Youth between the ages of 13 and 21 are particularly susceptible to nicotine's addictive properties. Among adolescents, nicotine cultivates addictive behaviors by rewiring and interfering with brain development. Nicotine exposure during adolescence is associated with disturbances in working memory and attention as well as reduced prefrontal cortex activation. Adolescent tobacco and nicotine use are associated with later risk of developing mental and behavioral problems such as major depressive disorder, agoraphobia, panic disorder, addiction to other substances and/or antisocial personality disorder.

14. Nicotine from ENDS use is not the only chemical of substantial concern to medical and public health officials. Chemical reactions that occur when the JUUL ENDS heats the liquid in the JUUL pod to the temperature necessary to create the vapor or aerosol result in the JUUL ENDS user ingesting more than 30 toxins, including some specifically identified as carcinogens. In turn, when the JUUL ENDS user exhales, the Discharge introduces nicotine and other toxins and carcinogens into the ambient air. Medical studies to date have prompted the United States

6

Surgeon General to emphasize that JUUL ENDS Discharge is not merely "water vapor" and to publicly declare that ingesting JUUL ENDS Discharge can and does cause injury to non-vaping individuals in proximity to the Discharge. Specifically, JUUL ENDS Discharge includes, among other substances:

- Propylene glycol – a common additive in food; also used to make things like antifreeze, paint solvent, and artificial smoke in fog machines;
- Carcinogens including acetaldehyde and formaldehyde;
- Acrolein – a herbicide primarily used to kill weeds that can cause irreversible lung damage in humans;
- Diacetyl – a chemical linked to a lung disease called bronchiolitis obliterans (aka "popcorn lung");
- Diethylene glycol – a toxic chemical used in antifreeze that is linked to lung disease;
- Heavy metals such as nickel, tin and lead;
- Cadmium – a toxic metal found in traditional cigarettes that causes breathing problems and disease;
- Benzene – a volatile organic compound (VOC) found in car exhaust; and
- Ultrafine particles that can be inhaled deep into the lungs and reduce lung capacity.

15. As a result, individuals like Plaintiffs who do not use JUUL ENDS and avoid knowing exposure to JUUL ENDS Discharge nonetheless involuntarily are exposed to and breathe in nicotine and other toxins contained in the Discharge. In most cases, the greater the degree of an individual's exposure to the JUUL ENDS Discharge, the greater the likelihood that individual will be harmed by the nicotine and other toxins contained in the JUUL ENDS Discharge.

16. JUUL currently controls approximately 75% of the e-cigarette market nationally, including in Illinois. Currently approximately 13.7 million individuals reside in Illinois and JUUL has sold more than 10 million JUUL ENDS in Illinois since 2016. Recent data published by the

Center for Disease Control estimates that 27.5% of all Illinois high school students, 10.5% of all Illinois middle school students and 2.8% of Illinois adults used JUUL ENDS or a comparable ENDS within the last 30 days. Thus, on any given day, hundreds of thousands of Illinois residents are using JUUL ENDS every month.

17. Since 2016, millions of Illinois residents have used JUUL ENDS and disseminated JUUL ENDS Discharge into the ambient air, including in confined areas such as trains, buses, restrooms, classrooms, gymnasiums, cafeterias and other locations. JUUL ENDS users in Illinois -- using the JUUL ENDS in the manner in which JUUL intended – thus have exposed millions of other Illinois residents to nicotine and other toxic substances in the JUUL ENDS Discharge.

18. But for the JUUL ENDS users' consistent pollution of the ambient air with the Discharge, Plaintiffs and millions of other Illinois residents would not have ingested nicotine and other carcinogens from the JUUL ENDS Discharge and would not have suffered bodily injury resulting solely or primarily from ingesting the Discharge.

**CLASS ALLEGATIONS**

19. Plaintiffs bring this lawsuit on their own behalves and, pursuant to Rule 23(a) (1-4) and Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of the following proposed class (the "Class"):

> All Illinois residents who, since 2016, have not smoked tobacco products, used non-combustion tobacco products and did not consistently and voluntarily expose themselves to JUUL ENDS Discharge.

Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment. Plaintiffs specifically exclude from the Class Defendant JUUL, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners,

8

joint-venturers or any entities controlled by JUUL and its heirs, successors, assigns, or other persons or entities related to or affiliated with JUUL and/or its officers and/or directors, the District Judge and Magistrate Judge assigned to this action, and any member of the District Judge's or Magistrate Judge's immediate family.

20. ***Numerosity (Rule 23(a)(1))***. The members of the Class are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs allege that the Class contains several million members. Although Plaintiffs currently do not know the precise number of Class members, potential Class members may receive adequate notice of the pendency of this action by published notice.

21. ***Predominance (Rule 23(a)(2))***. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

   a) Whether JUUL ENDS Discharge contains nicotine and other toxic substances that cause bodily injury to individuals who are proximate to JUUL ENDS users and inhale the Discharge;

   b) Whether JUUL ENDS were unreasonably dangerous at the time JUUL delivered the JUUL ENDS to Illinois consumers;

   c) Whether JUUL knew or reasonably should have known that exposure to JUUL ENDS Discharge caused bodily injury in individuals proximate to JUUL ENDS users; and

   d) Whether requiring JUUL to pay for medical monitoring for the Class to allow members to consistently assess the adverse impact of having inhaled JUUL ENDS Discharge and to detect, diagnose and treat medical conditions proximately caused by inhaling JUUL ENDS Discharge.

22. ***Typicality (Rule 23(a)(3))***. Plaintiffs' claims are typical of the claims of the other Class members. Like other Class members, Plaintiffs were exposed involuntarily to JUUL ENDS

Discharge in locations and under circumstances Plaintiffs reasonably believed to otherwise be safe and free of nicotine and other toxins and carcinogens.

23. ***Adequacy of representation (Rule 23(a)(4))***. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are represented by counsel with substantial experience in complex civil litigation and Plaintiffs have the resources necessary to vigorously prosecute this action. Further, Plaintiffs haves no interests that are antagonistic to those of the Class.

24. ***Superiority (Rule 23(b)(3))***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Some of the damages suffered by individual Class members remain unknown and will require ongoing medical monitoring to assess, diagnose and treat. Each Class member would incur substantial burden and expense to litigate their respective individual claims against JUUL. It thus would be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation also would increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of 1) adjudication of these issues in a single proceeding; 2) economies of scale; 3) comprehensive supervision by a single court; and 4) the absence of any unusual management difficulties for the Court. The Class may also be certified because: (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the defendant; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and (c) JUUL's conduct generally is uniform toward the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

<b><u>COUNT I -- STRICT PRODUCT LIABILITY</u></b><br>
<b>(Plaintiffs and Class Members)</b>

25. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 24 above as their allegations of this Paragraph 25 as if fully set forth herein.

26. Plaintiffs are residents of the State of Illinois.

27. Between 2016 and the present, JUUL has sold millions of JUUL ENDS to consumers in the State of Illinois for use in Illinois.

28. The JUUL ENDS that JUUL intended Illinois consumers to use in the State of Illinois were unreasonably dangerous at the time they left JUUL's control. Specifically, when JUUL ENDS users in Illinois operated the JUUL ENDS in a normal manner as JUUL intended, the JUUL ENDS Discharge contained, among other substances, nicotine, formaldehyde, volatile organic compounds, ultrafine particles that can be inhaled deep into the lungs. JUUL ENDS Discharge may also contain the flavoring diacetyl, the latter of which definitively has been linked to the serious, irreversible lung disease obliterative bronchiolitis (a\k\a "Popcorn Lung"). Formaldehyde contained in JUUL ENDS Discharge is recognized as a cancer-causing chemical and heavy metals including nickel, tin and lead are known pollutants that decrease lung function when inhaled. Glycol, glycidol, acetaldehyde, and acrolein — also found in JUUL ENDS Discharge – have been proven to be carcinogens and/or respiratory irritants. Moreover, even the

11

JUUL ENDS products that JUUL markets as being "nicotine free" in fact release detectable levels of nicotine in the superheated Discharge.

29. Plaintiffs are not smokers or JUUL ENDS users and did not intentionally expose themselves to nicotine and the other carcinogens contained in the JUUL ENDS Discharge. Plaintiffs exercised caution to avoid areas where JUUL ENDS users were releasing Discharge into the ambient air, particularly in confined spaces. Despite their conscientious efforts, however, Plaintiffs nonetheless were exposed to and inhaled JUUL ENDS Discharge routinely between 2016 and the present, including but not limited to locations such as classrooms, school restrooms and locker rooms, school buses, public transportation and other places where JUUL ENDS use ostensibly was prohibited.

30. Beginning in at least 2016, JUUL knew that JUUL ENDS, when used in Illinois in a normal fashion as JUUL intended, resulted in JUUL ENDS Discharge contaminating the ambient air proximate to the JUUL ENDS user.

31. JUUL knew since at least 2016 that JUUL ENDS users were using JUUL ENDS and releasing Discharge in locations where JUUL ENDS use was prohibited, including in high schools and junior high schools and public transportation and expected such use to continue at the same or higher levels in the future.

32. Through repetitive exposure to JUUL ENDS Discharge since 2016, Plaintiffs involuntarily ingested nicotine, formaldehyde, volatile organic compounds and other toxins.

33. Plaintiffs' exposure to nicotine and the toxins in JUUL ENDS Discharge has proximately caused or will cause, among other injuries, immediate airway obstruction and inflammation, increased heart rate and throat irritation, prompting Plaintiffs to seek medical

attention for their symptoms. Plaintiffs experience some or all of these conditions each time they come into contact with JUUL ENDS Discharge.

34. Plaintiffs' exposure to the JUUL ENDS Discharge has caused existing bodily injury to Plaintiffs and also has substantially increased the likelihood that Plaintiffs will be afflicted by chronic obstructive pulmonary disease, immune responses associated with inflammatory lung diseases, constriction of peripheral airways, aggravation of the central nervous system and spleen, throat and mouth irritation, cough, nausea, and vomiting.

35. Since 2016, JUUL has been and currently is aware of alternative designs that could be implemented when manufacturing JUUL ENDS that would render the JUUL ENDS Discharge harmless to individuals like the Plaintiffs and to the balance of the population in Illinois. For its own business reasons, JUUL consciously elected not to implement design and manufacturing changes that would have rendered the JUUL ENDS Discharge harmless to individuals like the Plaintiffs and to the balance of the population in Illinois.

36. JUUL's sale and delivery of JUUL ENDS in Illinois since 2016 that did not protect non-users in proximity to JUUL ENDS users from nicotine and other toxins and carcinogens contained in JUUL ENDS Discharge proximately caused the adverse health consequences that Plaintiffs have suffered to date and that Plaintiffs will continue to suffer in the future when exposed to JUUL ENDS Discharge.

37. Plaintiff pays insurance premiums for health care coverage for herself and for Minor and also pays certain out-of-pocket medical costs for herself and for Minor. Plaintiffs' ingestion of JUUL ENDS Discharge and their corresponding concerns about bodily injuries they have suffered to date and will incur in the future have prompted Plaintiffs to incur costs for medical treatment to assess the effect of Plaintiffs' respective exposures to nicotine and other toxic

13

constituents in JUUL ENDS Discharge that would not have been necessary but for exposure to JUUL ENDS Discharge.

38. Plaintiffs require ongoing medical monitoring to consistently assess the effect of Plaintiffs' respective exposures to nicotine and other toxic constituents in JUUL ENDS Discharge that would not be necessary but for exposure to JUUL ENDS Discharge. To the extent that Plaintiffs' future medical tests disclose the presence of nicotine in Plaintiffs' bloodstreams that is attributable to Plaintiffs' exposure to the JUUL Discharge, Plaintiffs may not qualify for the most favorable "non-nicotine" premium rates traditionally reserved for applicants whose tests disclose no nicotine. As a result, Plaintiffs likely will incur substantially higher costs for health and life insurance in the future.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

a) Certify the Class as defined above, appointing Plaintiffs as Class Representatives and appointing undersigned counsel as Class Counsel;

b) Enter judgment in Plaintiffs' and the Class' favor and against JUUL in an amount sufficient to compensate Plaintiffs and Class Members for all bodily injuries suffered to date and reasonably likely to be suffered in the future, including but not limited to medical treatment costs;

c) Enter judgment in Plaintiffs' and Class Members' favor and against JUUL in an amount sufficient to compensate Plaintiffs and Class Members for the cost of future ongoing medical monitoring of Plaintiffs' and Class Members' health to assess the effect of the JUUL ENDS Discharge; and

d) Grant Plaintiffs and Class Members such other and further relief as the Court deems just and reasonable under the circumstances.

## COUNT II

## <u>NEGLIGENCE</u>
**(Plaintiffs and Class Members)**

39. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 27 of this Complaint as the allegations of this Paragraph 39 as if fully set forth herein.

40. Plaintiffs reallege and incorporate by reference the allegations of the second sentence of Paragraph 28 through Paragraph 34 of this Complaint as the allegations of this Paragraph 40 as if fully set forth herein.

41. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 36 through 38 of this Complaint as the allegations of this Paragraph 41 as if fully set forth herein.

42. JUUL knew or reasonably should have known prior to 2016 that JUUL ENDS Discharge released into the ambient proximate to air vapors containing medically significant amounts of nicotine, formaldehyde, volatile organic compounds and other toxins.

43. JUUL knew or reasonably should have known prior to 2016 that Plaintiffs and other Illinois residents who neither smoked nor otherwise voluntarily exposed themselves to JUUL ENDS Discharge nonetheless would inhale Discharge anytime they were near JUUL ENDS users.

44. JUUL had a duty to warn Plaintiffs that JUUL ENDS Discharge contained nicotine and other toxic chemicals that JUUL ENDS so Plaintiffs could take reasonable precautions to avoid exposure to JUUL ENDS Discharge.

45. JUUL failed and continues to fail to disclose to Illinois residents that inhaling JUUL ENDS Discharge exposed Plaintiffs and other Illinois residents to nicotine and other toxic and carcinogenic substances.

46. Plaintiffs' ingestion of JUUL ENDS Discharge and their corresponding concerns about bodily injuries they have suffered to date have prompted Plaintiffs to incur costs for medical

treatment to assess the effect of Plaintiffs' respective exposures to nicotine and other toxic constituents in JUUL ENDS Discharge that would not have been necessary but for exposure to JUUL ENDS Discharge.

47. Having been exposed to the toxic JUUL ENDS Discharge, Plaintiffs require ongoing medical monitoring to consistently assess, diagnose and treat the adverse health effects of Plaintiffs' respective exposures to nicotine and other toxic constituents in JUUL ENDS Discharge that would not be necessary but for exposure to JUUL ENDS Discharge. To the extent that Plaintiffs' future medical tests disclose the presence of nicotine in Plaintiffs' bloodstreams that is attributable to Plaintiffs' exposure to the JUUL Discharge, Plaintiffs may not qualify for the most favorable "non-nicotine" premium rates traditionally reserved for applicants whose tests disclose no nicotine. As a result, Plaintiffs likely will incur substantially higher costs for health and life insurance in the future.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

a) Certify the Class as defined above, appointing Plaintiffs as Class Representatives and appointing undersigned counsel as Class Counsel;

b) Enter judgment in Plaintiffs' and the Class' favor and against JUUL in an amount sufficient to compensate Plaintiffs and Class Members for all bodily injuries suffered to date and reasonably likely to be suffered in the future, including but not limited to medical treatment costs;

c) Enter judgment in Plaintiffs' and Class Members' favor and against JUUL in an amount sufficient to compensate Plaintiffs and Class Members for the cost of future ongoing medical monitoring of Plaintiffs' and Class Members' health to assess the effect of the JUUL ENDS Discharge; and

d) Grant Plaintiffs and Class Members such other and further relief as the Court deems just and reasonable under the circumstances.

### JURY DEMAND

Plaintiffs and Class Members hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Tammy Lewis and XXX Lewis (a Minor), Individually and on Behalf of All Similarly Situated Class Members


By: s/ Matthew R. Wildermuth
One of Their Attorneys


**COUNSEL FOR PLAINTIFFS TAMMY LEWIS AND XXX LEWIS (A MINOR)**

Matthew R. Wildermuth
ARDC No. 6202106
THE LAW OFFICES OF
MATTHEW R. WILDERMUTH
1900 75th Street
Woodridge, IL 60517
Direct: 630.324.9928
mrw@wildermuthlawoffices.com